1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  PAULINE M. THOMAS,                          Case No. 09-CV-01908-JLT

12             Plaintiff,                        ORDER REGARDING PLAINTIFF'S
                                                 SOCIAL SECURITY COMPLAINT
13      vs.
                                                 ORDER DIRECTING THE ENTRY OF
14                                               JUDGMENT FOR DEFENDANT
                                                 MICHAEL J. ASTRUE, COMMISSIONER OF
15  MICHAEL J. ASTRUE,                           SOCIAL SECURITY, AND AGAINST
    Commissioner of Social Security,            PLAINTIFF PAULINE M. THOMAS
16
                  Defendant.
17  _____/

18         Pauline M. Thomas ("Plaintiff") asserts that she is entitled to Supplemental Security Income

19  ("SSI") benefits.  Plaintiff argues that the administrative law judge ("ALJ") improperly assessed her

20  symptom testimony and erred in finding the testimony lacked credibility.  Therefore, Plaintiff seeks

21  judicial review of the administrative decision denying her claim for SSI benefits.  For the reasons set

22  forth below, the Court affirms.

23                          **PROCEDURAL HISTORY**[1]

24         Plaintiff filed an application for SSI benefits under Title XVI of the Social Security Act on

25  March 19, 2007, alleging disability beginning March 8, 2006.  AR at 114-17.  This claim was denied

26  on April 30, 2007, and upon reconsideration on September 11, 2007, by the Social Security

27  _____

28  [1]  References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1   Administration. *Id.* at 78-81, 85-89. After requesting a hearing, Plaintiff testified before an ALJ on

2   February 12, 2009, at which time Plaintiff amended her application to allege a closed period of

3   disability from February 8, 2007, to April 1, 2008. *Id.* at 9; *see also id.* at 22-23.

4        The ALJ determined Plaintiff was not disabled from February 8, 2007, to April 1, 2008, and

5   issued an order denying benefits on June 3, 2009. AR at 9-15. Plaintiff requested a review of the

6   decision by the Appeals Council, which was denied on August 2, 2009. *Id.* at 1-5. Therefore, the

7   ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

8                        **STANDARD OF REVIEW**

9        District courts have a limited scope of judicial review for disability claims after a decision by

10  the Commissioner to deny benefits under the Act. When reviewing findings of fact, such as whether

11  a claimant was disabled, the Court must determine whether the Commissioner's decision is

12  supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's

13  determination that the claimant is not disabled must be upheld by the Court if the proper legal

14  standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y*

15  *of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

16       Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a

17  reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

18  389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole

19  must be considered, as "[t]he court must consider both evidence that supports and evidence that

20  detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

21                      **DISABILITY BENEFITS**

22       To qualify for benefits under Title XVI of the Social Security Act, Plaintiff must establish

23  that she is unable to engage in substantial gainful activity due to a medically determinable physical

24  or mental impairment that has lasted or can be expected to last for a continuous period of not less

25  than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability

26  only if:

27         his physical or mental impairment or impairments are of such severity that he is not only
        unable to do his previous work, but cannot, considering his age, education, and work

28         experience, engage in any other kind of substantial gainful work which exists in the

1   national economy, regardless of whether such work exists in the immediate area in which
2   he lives, or whether a specific job vacancy exists for him, or whether he would be hired
    if he applied for work.

3   42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

4   *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  By showing an inability to perform past relevant

5   work, a claimant establishes a prima facie case of disability.  *Maounis v. Heckler*, 738 F.2d 1032,

6   1034 (9th Cir. 1984).  If this is shown, the burden shifts to the Commissioner to prove the claimant is

7   able to engage in other substantial gainful employment.  *Id.*

8                                    **DISCUSSION AND ANALYSIS**

9           To achieve uniform decisions, the Commissioner established a sequential five-step process

10  for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)-(f), 416,920(a)-(f) (1994).

11  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful

12  activity during the period of alleged disability, (2) had medically determinable severe impairments

13  (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P,

14  Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant

15  work or (5) the ability to perform other work existing in significant numbers at the state and national

16  level.  *Id.*

17  A.  Medical Evidence

18          As noted by the ALJ, "[t]he majority of claimant's treatment was provided prior to the

19  amended alleged closed period of disability."  AR at 13.  During the period at issue, "the

20  examinations performed were. . . noncontributory. . . [and] the claimant was treated conservatively

21  with medications."  *Id.*

22          On January 13, 2003, Plaintiff had an MRI on her lumbar spine that showed a "mild central

23  bulge…with early disc changes [and] no evidence of herniated nucleus pulposus."  AR at 245.  Later

24  in 2003, Plaintiff was treated at Fresno Neurosurgical Medical Group by Dr. John Slater for back

25  pain.  *Id.* at 172-87.  Dr. Slater observed that Plaintiff walked with great care and appeared

26  uncomfortable while walking.  *Id.* at 175.  He noted Plaintiff exhibited "extreme tenderness," and

27  opined that "[s]he has evidently been hurting so long that now she jumps every time she is touched,

28

                                                    3

1  whether or not that jump is 'reasonable' for the amount of stimulus or not." *Id.* at 175-76.  For this

2  pain, and assistance in sleeping, Dr. Slater proscribed Vioxx, Celebrez, and Valium.  *Id.* at 176.

3        Plaintiff received chiropractic treatment for back pain at Garabedian Chiropractic.  AR at

4  233-43.  Medical records from Adventist Health show that Plaintiff suffered intermittent pain during

5  the relevant time period in 2007 and 2008.[2]  *Id.* at 209-15, 250-57, 261-71. In April 2007, while at

6  Central Valley Family Health for a follow-up appointment, Plaintiff reported visiting the

7  chiropractor; Plaintiff stated that she felt "much better" with the treatment and had "occasional"

8  lower back and leg pain.  *Id.* at 211.  In July 2007 and May 2008, musculoskeletal examinations

9  showed Plaintiff was within normal limits.  *See id.* at 254, 262.

10        Dr. Roger Fast reviewed the record on April 23, 2007, and noted that Plaintiff "still has

11  complaints of pain in her back but without neurological findings."  AR at 203.  Notably, Dr. Fast

12  pointed out that Plaintiff's most recent x-ray was normal.  *Id.*  Finally, Dr. Fast determined Plaintiff's

13  disability was "non severe."  *Id.*  Dr. W.G. Jackson reviewed the record and Dr. Fast's opinion, and

14  confirmed Dr. Fast's assessment "as written" on September 4, 2007.

15  B.  Hearing Testimony

16        Plaintiff testified that during the closed period, she could not work because her pain

17  medication made her "so drowsy [she] couldn't function" and that when working, it made she felt

18  "high."  AR at 26, 28.  When she reported feeling high to a doctor, no change in treatment was

19  suggested.  *Id.* at 29.  In addition, Plaintiff reported using heat pads, compresses, ice, and exercised

20  at home while trying to defray her pain.  *Id.*  Plaintiff stated that she never had a surgical

21  consultation, though the neurologist to whom she was referred told her an MRI showed nothing

22  wrong with her back.  *Id.* at 30.

---

25     [2] At Adventist Health, evidently Plaintiff was asked at each visit to estimate her amount of pain, on a scale of 0 to 10, with "0" being no pain and "10" a great amount of pain.  On January 25, 2007, Plaintiff estimated that her pain was a 2. AR at 209.  On February 8, 2007, Plaintiff estimated the pain in her back was a 7.  *Id.* at 241.  On March 22, 2007, Plaintiff stated her hip pain was at a 6.  *Id.* at 212. In April of 2007, she said she had no pain.  *Id.* at 21.  In May 2007, her pain level was a 5, but it increased by June 28, 2007 to a 9.  *Id.* at 269, 271.  In late July and October 2007, Plaintiff reported that she had no pain.  *Id.* at 261, 266.  On February 9, 2008, Plaintiff estimated that her pain was a 3, but on February 25, 2008, Plaintiff stated she had no pain. *Id.* at 256-57.  On March 5, 2008, Plaintiff stated she had pain in her low back and hip that was at a level 5.  *Id.* at 254. On March 31, 2008, Plaintiff reported that she had no pain.  *Id.* at 255.

Also during the closed period, Plaintiff said she took medication for hypertension and headaches she suffered twice a week.  AR at 31-33.  Plaintiff was not sure if she had symptoms of hypertension because she was drowsy, and the blood pressure medication did not cause any side effects.  *Id.* at 31.  Plaintiff said she had headaches approximately twice a week, for which she took Advil.  *Id.* at 34.  She estimated that while on the medication, she had the ability to walk "a block or less," stand for about fifteen minutes, sit for two to three hours in different positions, and lift approximately five pounds.  *Id.* at 44.  In addition, Plaintiff would lay down two to three times a day, for between one and one and half hours each time.  *Id.* at 45.  Plaintiff stated that during this time, she was able to tend to her own personal needs "some days," but she did not cook, do housework, or shop.  AR at 40-41.  She would watch television, listen to the radio or music, and read about 5-10 pages at a time.  *Id.* at 42.  In addition, she would occasionally attend religious services.  *Id.*  Plaintiff stated her concentration "wasn't good," and she could keep her attention on something for "30 minutes to an hour."  *Id.* at 46.

After the closed period, when Plaintiff worked at a packinghouse, she would "scale trucks in and weigh trucks."  AR at 34.  Plaintiff worked twelve hours per day, six days a week.  *Id.* at 36-37.  She was not required to lift anything while at work, and had the option of standing or sitting for as long as she desired.  *Id.* at 35, 38.  Plaintiff stated that she stopped working because of her back pain.  *Id.* at 39.  In addition, Plaintiff said she went to the Department of Aging to be trained for a job in 2006.  *Id.* at 49.

Vocational expert ("VE") Cheryl R. Chandler testified after Plaintiff at the hearing.  The VE testified that Plaintiff's past relevant work as an administrator at a residential facility and an accounts payable clerk were both light, skilled jobs.  AR at 47.  According to the VE, the administrative position had transferrable skills to sedentary, office clerical work.  *Id.* at 50.  However, the VE opined "If she doesn't have some…relatively up-to-date computer skills, that limits transferability."  *Id.* at 51.

The VE considered hypothetical individuals and their ability to work.  First, the VE determined that an individual 55 to 57 years old, with a high school education and the work history of Plaintiff, who could lift 20 pounds occasionally; 10 pounds frequently; stand, walk or sit six of

eight hours a workday; and stoop occasionally would be able to perform Plaintiff's past relevant work. AR at 51. Second, the VE considered an individual of the same age, education, and work history as Plaintiff, who could not lift more than five pounds; sit for two or three hours at a time before needing to rest 15 minutes. *Id.* at 52. The VE opined that such an individual would be able to perform administrative work. *Id.* However, if drowsiness were factored in with attention and concentration restricted to simple tasks, the individual would not be able to perform Plaintiff's past relevant work, nor any skilled work. *Id.*

C. The ALJ's Findings

Pursuant to the five-step process, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the closed disability period from February 8, 2007 to April 1, 2008. AR at 11. Second, the ALJ found Plaintiff had a severe impairment of lumbar disc degeneration, and that her hypertension was not severe. *Id.* The lumbar disc degeneration impairment did not meet or medically equal one of the listed impairments "[d]ue to a lack of significant objective findings." *Id.* at 12.

At the fourth step, to determine Plaintiff's residual functional capacity ("RFC"), the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." AR at 12. The ALJ determined that Plaintiff had the RFC "to lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk 6 of 8 hours, and sit 6 of 8 hours." *Id.* at 12. With this RFC, Plaintiff could perform any medium work. *Id.* Therefore, the ALJ concluded Plaintiff "was capable of performing past relevant work as administrator and accounts payable clerk, light skilled jobs." *Id.* at 14.

D. Credibility of the Plaintiff

In making the above findings, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of theses symptoms were not credible to the extent they were inconsistent with the above residual functional capacity assessment." AR at 13. Plaintiff asserts that the ALJ's reasons for rejecting Plaintiff's testimony and subjective complaints were legally insufficient. Specifically, Plaintiff argues that "a rejection of a claimant's testimony based on a lack of objective evidence is always legally insufficient." (Doc. 14 at 7).

1    An adverse finding of credibility must be based on clear and convincing evidence where there

2  is no affirmative evidence of a claimant's malingering and "the record includes objective medical

3  evidence establishing that the claimant suffers from an impairment that could reasonably produce the

4  symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160

5  (9th Cir. 2008).  The ALJ may not discredit a claimant's testimony as to the severity of symptoms

6  because they are unsupported by objective medical evidence.  *See Bunnell v. Sullivan*, 947 F.2d 341,

7  347-48 (9th Cir. 1991).  In addition, the ALJ "must identify what testimony is not credible and what

8  evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834; *see also*

9  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Factors that may be considered include: (1) the

10  claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and

11  conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to

12  seek treatment or follow a prescribed course of treatment and (5) testimony from physicians

13  concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v.*

14  *Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th

15  Cir. 2002).  The credibility findings "must be sufficiently specific to allow a reviewing court to

16  conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily

17  discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

18    *Objective medical evidence*

19    The ALJ considered the medical record and determined that the "scant" evidence did not

20  support a finding of disability. AR at 13.  Specifically, the ALJ found Plaintiff's "subjective

21  complaints were excessive and disproportionate to the objective findings." *Id.*  In addition, the ALJ

22  noted that a "majority of the claimant's treatment was provided prior to the alleged closed period of

23  disability . . . and the examinations performed during the period at issue were noncontributory."

24  Rather, during the relevant time period, "[t]here were no neurologic findings.  There were no motor

25  or sensory deficits.  There were no muscular atrophy, nor radicular distribution of pain, and an

26  assistive device was not warranted." *Id.* at 14.  Such clinical evidence should be considered when

27  analyzing Plaintiff's symptom testimony.  *Bunnell*, 947 F.2d at 345 (the ALJ must determine

28  whether objective medical evidence demonstrates that there is an underlying impairment); *see also*

*Meanel*, 172 F.3d at 1114 (the claimant "did not exhibit muscular atrophy or any other physical signs of an inactive, totally incapacitated individual"); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th 2005) (objective medical findings were considered by the ALJ as factors in rejecting the claimant's testimony). Thus, the "scant" medical evidence was a legitimate reason for rejecting Plaintiff's testimony.

### Conservative treatment

A "majority of the claimant's treatment was provided prior to the alleged closed period of disability . . . and the examinations performed during the period at issue were noncontributory." AR at 13. Additionally, the ALJ noted that Plaintiff "was treated conservatively with medications" and was not "undergoing any aggressive medical treatment." *Id.* As the ALJ observed, Plaintiff "was not being considered as a surgical candidate nor was she undergoing any physical therapy or other similar treatment. She did not require any hospital or emergency care." *Id.* at 13-14. The amount of treatment that Plaintiff received, especially when conservative, is a legitimate consideration in a credibility finding. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (The ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged). Therefore, the conservative treatment Plaintiff received was a valid consideration by the ALJ.

### Plaintiff's testimony and the ALJ's observations

As stated, an ALJ may consider inconsistencies in testimony, or between testimony and the conduct at hearing. *Fair*, 885 F.2d at 603. Here, the ALJ compared Plaintiff's testimony to her appearance at the hearing. The ALJ identified inconsistencies, stating: "She also alleged difficulty focusing, but at the hearing she was responsive and had no difficulty with her memory, in concentrating, or in formulating responses." AR at 14. Such observations are a legitimate reason for rejecting Plaintiff's testimony. *See Morgan v. Commissioner of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999) (conflict between the personal observations of the ALJ and the claimant's testimony provided a specific and substantial reason for finding the claimant lacked credibility). Because the ALJ's

1  observations of Plaintiff did not conform to her testimony, this was a legitimate reason for rejecting

2  Plaintiff's testimony.

3      *Daily activities*

4      In addition, the ALJ referenced Plaintiff's daily activities in his credibility finding.  He

5  opined, "[Plaintiff's] daily activities were somewhat limited during the period at issue, but this is not

6  clearly due to a medical impairment."  AR at 14.  The ALJ "is entitled to draw inferences logically

7  flowing from the evidence."  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999).  Also, the ALJ

8  may determine that a claimant's activities were "self-limited" where the activities do not reflect the

9  medical evidence.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165-67 (9th Cir. 2001).  In this case, the

10  ALJ determined that the limitations to the daily activities of Plaintiff, who did not do housework or

11  shop, were not clearly caused by the medical conditions alleged.  This also was a legitimate and

12  specific reason for rejecting Plaintiff's credibility.

13      **CONCLUSION**

14      As Plaintiff argues, her subjective complaints could not be rejected by the ALJ "based solely

15  on a lack of medical evidence to fully corroborate the alleged severity of pain."  *Burch*, 400 F.3d at

16  680.  However, the ALJ did not reject Plaintiff's testimony solely on the lack of medical evidence

17  from the relevant time period.  To the contrary, the ALJ considered a number of factors, including

18  the medical evidence, the conservative treatment Plaintiff received, inconsistencies between

19  Plaintiff's testimony and the ALJ's observations at the hearing, and Plaintiff's daily activities during

20  the relevant time period.  Moreover, the ALJ's consideration of a number of permissible factors

21  demonstrates that the ALJ did not arbitrarily discredit Plaintiff's testimony.  *See  Moisa*, 367 F.3d at

22  885.  For all these reasons, the ALJ provided clear and convincing reasons for rejecting Plaintiff's

23  symptom testimony.

24      Where the evidence supporting rejection of a claimant's credibility is substantial, and where

25  the ALJ did not arbitrarily reject the Plaintiff's testimony, the decision will be upheld even though

26  the finding is not extensive as possible and does not consider all possible factors.  *Crane v. Shalala*,

27  76 F.3d 251, 253 (9th Cir. 1996) (rejection upheld where the ALJ considered the claimant's daily

28  activities, notes of the treating therapist, and the claimant's response to treatment); *Tidwell v. Apfel*,

161 F.3d 599, 602 (9th Cir. 1999) (partial rejection of claimant's testimony upheld where the ALJ considered medical evidence, daily activities, and the claimant's testimony that medication aided with her pain).

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of Court IS DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff Pauline M. Thomas.

IT IS SO ORDERED.

Dated:   **December 1, 2010**                              **/s/ Jennifer L. Thurston**
                                                     UNITED STATES MAGISTRATE JUDGE

10